Gregory M. Berry
Reg. No. 33886-112
Federal Correctional Institution
P.O. Box 420
Fairton, N.J.  08320-0420

In pro se



RECEIVED
OCT 1 4 2022
AT 8:30_____
WILLIAM T. WALSH ____M
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

CAMDEN DIVISION

GREGORY MAC DONALD BERRY,  )
                           )
    Plaintiff,             )
                           )
v.                         )    Case No._____
                           )
UNITED STATES OF AMERICA,  )
C. HANSEN, R.N., BSA, HSA; )    **VERIFIED COMPLAINT**
ABIGAIL LOPEZ DE LASALLE, M.D.; )    **BY PRISONER**
ELLEN MACE-LEIBSON, D.O.;  )
CAMILLA HANSEN, ARNP,      )
                           )    **JURY TRIAL DEMANDED**
    Defendants.            )

## I.    JURISDICTION

1. Jurisdiction of this Court, over the United States of America is invoked pursuant to 28 U.S.C. §1346; Federal Tort Claims Act.

2. Jurisdiction of this Court, over C. Hansen, Abigail Lopez De Lasalle, Ellen Mace-Leibson, and Camilla Hansen, in their official and induvidual capacities, is invoked pursuant to 28 U.S.C. §1331; 42 U.S.C. §1983, and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

## II.    PARTIES

3. Plaintiff, Gregory Berry, at all relevant times was incarcerated at United States Penitentiary - Tucson, Arizona, United States Penitentiary - Terre Haute, Indiana, and Federal

1

Correctional Institution - Fairton, New Jersey.

4.   Mr. Berry is currently incarcerated at FCI - Fairton, New Jersey.

5.   Defendant, United States of America, at all relevant times employed staff at each of the Federal Correctional Institutions.

6.   Defendants, C. Hansen, Abigail Lopez De Lasalle, Ellen Mace-Leibson, and Camilla Hansen, at all relevant times were employees at Federal Correctional Institution - Fairton, New Jersey.

### III.   PREVIOUS LAWSUITS

7.   Mr. Berry has no previously filed suits.

### IV.   ADMINISTRATIVE REMEDIES

8.   Mr. Berry has fully exhausted all informal and formal Administrative Remedies.

### V.   RELEVANT FACTS

9.   On 7/7/2014 Mr. Berry was diagnosed with Stage III kidney disease and BOP Health Services (HS) documented that it was most likely caused by the use of non-steroidal anti-inflammatory drugs (NSAIDs).

10.   On 7/7/2014 Mr. Berry was advised to avoid all NSAIDs and HS discontinued his prescription of Ibuprofen.

11.   On 2/2/2016 Mr. Berry was diagnosed with Stage II kidney disease which HS documented the cause to be the use of NSAIDs.

12.   On 6/9/2017 HS updated Mr. Berry's medical records to reflect a NSAID allergy and cautioned the use of NSAIDs only when

2

absolutely needed.

13. On 3/4/2011 Mr. Berry was assaulted and on 3/25/2011 HS documented a medical assessment which occurred after the assault.

14. On 1/3/2019 HS documented Mr. Berry's C-Spine x-ray results which showed: a.) Mild degenerative disc disease at C5 - C6 and C6 - C7; b.) Minimal degenerative disc disease at C4 - C5; and c.) Straightening of the cervical spine, which could be due to muscular spasms.

15. On 6/21/2021 HS documented Mr. Berry's C-Spine x-ray results which showed: a.) C6 - C7 mild degenerative disc space narrowing with small end plate degenerative osteophyte and minimal facet arthropathy; and b.) a 3mm - 4mm calcification anterior logitudinal ligament at the disc level.

16. On 6/30/2021 HS reviewed the 6/21/2021 x-ray and documented that Mr. Berry's pain appears to be osteoarthritis and chronic, and a functional status most consistent with advanced ADLs.

17. From 7/7/2014 to current date Mr. Berry reported to HS and was assessed by HS on numerous occasions for chronic shoulder, neck and upper back pain.

18. As treatment for Mr. Berry's chronic pain HS prescribed NSAIDs and or directed the use of OTC NSAIDs 61 months out of 99 months.

19. On 1/6/2021 HS told Mr. Berry that Ibuprofen was not toxic to him.

20. On 1/15/2021 Mr. Berry reported increased pain in his lower back area after taking Ibuprofen for arthritis in his spine.

21. On 1/16/2021 Mr. Berry: a.) reported pain in his lower back

3

to left plank which shoots into his groin area; b.)  an increase of pain after taking Ibuprofen for neck pain; and c.)  requested HS prescribe an alternative pain treatment.

22.  On 6/28/2021 Mr. Berry filed a sick-call stating that he has told HS staff over-and-over that he cannot take Ibuprofen or Asprin for his osteoarthritis and left shoulder pain because they are toxic to his body. Mr. Berry requested alternative pain relief.

## CAUSE OF ACTION

A.  The United States violated New Jersey, Indiana, and Arizona law against Medical Malpractice/Negligence.

   i.   The standard of care for a patient who is diagnosed with both chronic kidney disease and chronic neck, shoulder and back pain is to follow a course of treatment that does not include the use of Non-Steroidal Anti-Inflammatory drugs (NSAIDs) for pain management.

   ii.  The United States deviated from the standard of care when as a course of treatment it prescribed NSAIDs, or directed Mr. Berry to use OTC NSAIDs 61 months out

4

of 99 months.

iii.   There is a direct link between kidney disease and the frequent and/or daily use of NSAIDs.

iv.    The continued prescription of NSAIDs caused further damage to Mr. Berry's kidneys, pain and suffering, and loss of enjoyment of life.

## VI.   RELEVANT FACTS

23.   Coming into the BOP Mr. Berry was placed on a Gastrointestinal Chronic Care Clinic and provided Omeprazole as an antacid therapy.

24.   On 8/10/2012 at the request of HS, Adobe Gastroenterology PC diagnosed Mr. Berry with Reflux Esophagitis and documented that he would require chronic antacid therapy and that Ranitidine 150 mg would be suggested.

25.   On numerous occasions between 2/21/2013 through 6/9/2016 HS documented Mr. Berry's severe Gastroesophageal Reflux Disease (GERD) with notes such as: a.)  Omeprazole has markedly improved his symptoms; b.)  Doing great with Omeprazole, continue same; c.) better with Omeprazole, continue same,; and d.)  well controlled with Omeprazole.

26.   Mr. Berry was transferred from USP Tucson and eventually from

Terre Haute where he was on chronic care clinic and continually prescribed and supplied with Omeprazole as a treatment for his severe GERD.

27. On 9/24/2018 HS staff at the Oklahoma Transfer Center supplied Mr. Berry with Omeprazole during his stay at the transfer center.

28. On 10/9/2018 Mr. Berry left Oklahoma Transfer Center werein HS staff provided a 7 day supply of Omeprazole to last until HS staff at FCI Fairton could start up his prescription.

29. On 10/10/2018 the day after Mr. Berry arrived at FCI Fairton HS discontinued the prescription for Omeprazole.

30. On 10/11/2018 Abigail Lopez De Lasalle MD (Lopez) removed Mr. Berry from the Gastrointestinal Chronic Care Clinic so the BOP no longer had to supply Omeprazole.

31. On 10/11/2018 after more than 6 years HS informed Mr. Berry that he was now responsible for the purchase of Ranitidine OTC for management of his GERD symptoms.

32. From 10/11/2018 to 5/19/2021 Mr. Berry was placed back on the Gastrointestinal Chronic Care Clinic and supplied Omeprazole, but only when Commissary could not supply the medication because it was out-of-stock.

33. On 3/10/2020 Kayla Fuller, PA (Fuller) documented in Mr. Berry's medical record that HS will give limited supply of Ranitidine for GERD symptoms as the Commissary is currently out of the medication.

34. On 4/2/2020 Fuller documented in Mr. Berry's medical records that due to recent nationwide recall of Ranitidine, it will be

discontinued and Mr. Berry would be started on Omeprazole.

35.   On 12/23/2020 Kyle Knowles PA-C documented in Mr. Berry's medical records that Omeprazole was clinically indicated at that time.

36.   Ellen Mace-Leibson DO (MAT) NER MAST physician (Mace-Leibson) prescribed Mr. Berry Omeprazole. On the same day Joellen Friedman PharmD (Friedman) documented that Mr. Berry did not qualify for Omeprazole and referred to Commissary. Mace-Leibson co-signed the discontinuation.

37.   Mr. Berry is diagnosed with Stage II Kidney Disease.

38.   Omeprazole is known for kidney toxicity to those with kidney disease.

39.   Mr. Berry should remain on chronic care clinic so he can be closely supervised by a physician regardless of whether he is directed to purchase OTC Omeprazole.

40.   On or after 5/19/2021 when Commissary was out-of-stock of Omeprazole, Mr. Berry requested HS to supply Omeprazole.

41.   On each occasion C. Hansen RN. BSA, HSA (C. Hansen HSA) would not allow HS to supply Mr. Berry Omeprazole even though Commissary did not have it in stock.

42.   On 6/26/2021 Mr. Berry filed a sick-call where he requested a 14 day supply of Omeprazole because Commissary was out-of-stock.

43.   C. Hansen HSA responded to Mr. Berry's sick call by referring him to Commissary to purchase Tums and Mylanta until Commissary received inventory, stating that he does not qualify for HS to provide medication to him.

44.   Without Omeprazole as treatment for Mr. Berry's diagnosed

severe GERD he suffers physical pain.

## CAUSE OF ACTION

B.  The United States violated New Jersey tort law against
    Medical Malpractice.

    i.    The standard of care for a patient who is diagnosed
          with both chronic kidney disease and GERD and is
          being treated with Omeprazole is to conduct the
          course of treatment under close physician supervision
          due to kidney toxicity associated with Omeprazole.

    ii.   The United States deviated from the standard of care
          when it removed Mr. Berry from the Gastrointestinal
          Chronic Care Clinic and directed him to self treat
          with OTC Omeprezole without direct physician's
          supervision.

    iii.  There is a direct link between Omeprazole and kidney
          toxicity.

8

iv.  Lack of careful physician supervision while being treated with Omeprazole causes further damage to Mr. Berry's kidney's, pain and suffering, and loss of enjoyment of life.

C.  Abigail Lopez De Lasalle MD and Ellen Mace-Leibson DO were deliberately indifferent in violation of the Eighth Amendment.

i.  Mr. Berry's diagnosed Stage II chronic kidney disease and GERD are both medical conditions requiring treatment.

ii.  Both Lopez and Mace-Leibson knew of Mr. Berry's diagnoses as they were his treating physicians and the diagnoses were documented in his medical records.

iii.  Dr. Lopez removed Mr. Berry from the Gastrointestinal Chronic Care Clinic for a non-medical reason, so that the BOP would not have to provide him with Omeprazole to treat GERD.

iv.  Mace-Leibson prescribed use of OTC Omeprazole to Mr. Berry without placing him on the Gastrointestinal Chronic Care Clinic which would have provided the required physicians supervision indicated when prescribing Omeprazole to a patient who also has chronic kidney disease.

D.  C. Hansen HSA was deliberately indifferent to Mr. Berry's serious medical conditions in violation of the Eighth Amendment.

i.  Mr. Berry's severe GERD is a diagnosed serious medical condition requiring treatment.

ii.  C. Hansen HSA knew of Mr. Berry's diagnosis as she was the Health Service Administrator and had access to all of his medical diagnoses documented in his medical records.

iii.  C. Hansen HSA denied Mr. Berry's request to be provided with Omeprazole knowing that Commissary was out-of-stock and that was the only place other than HS

that he could obtain the medication. The denial was for non-medical reasons stating he did not qualify for HS to supply the medication.

iv.  Mr. Berry requires Omeprazole as treatment for his diagnosed severe GERD and without treatment he experiences physical pain.

## VII.  RELEVANT FACTS

45.  On 1/22/2010 Mr. Berry requested and HS approved lactose free, no milk, and non-dairy meals.

46.  On 1/19/2011 HS entered Mr. Berry's Lactose intolerance as an allergy in his medical records.

47.  HS allowed Mr. Berry lactose free meal approval to expire and has since never renewed it.

48.  On 5/22/2017 Mr. Berry reported to HS that he may have a wheat allergy, explaining symptoms and requesting an evaluation for food alergy.

49.  On 6/9/2017 Mr. Berry reported to HS that eliminating wheat completely resolved his symptoms.

50.  On 6/9/2017 Mr. Berry filed a request to HS for food allergies testing, specifically wheat/gluten intolerance.

51.  On 6/19/2017 HS documented that testing did not support a food allergy, however the elimination diet alleviated symptoms, so Mr. Berry should continue.

11

52.   On 10/25/2018 Mr. Berry filed a sick-call with HS complaining of bowel cramping.

53.   On 11/1/2018, 2/12 and 4/2/2019 Mr. Berry informed HS of his lactose intolerance.

54.   On 2/20/2020 Mr. Berry reported to HS that: a.)  he had been having abdominal pain; b.)  had been having gas and bloating; and c.)  bowel movements relieved the pain.

55.   On 2/20/2020 HS conducted a physical exam on Mr. Berry and documented a suspicion of Irritable Bowel Syndrome (IBS) v. acute gastroenteritis.

56.   On 6/14/2021 Mr. Berry reported to Camilla Hansen ARNP (Camilla Hansen) that every time he eats something with gluten he experiences lower abdominal cramping, flatulence, and loose bowels.

57.   On 6/9 and 6/14/2021 Camilla Hansen instructed Mr. Berry to continue self-selecting gluten free foods from chowhall and commissary.

58. On 6/14/2021 Camilla Hansen documented that Mr. Berry has a diagnosis of Irritable Bowel Disease (IBD) on file.

59.   On 6/23/2021 Mr. Berry filed a sick-call with HS reporting pain in the lower abdominal area, stomach, and intestines.

60.   On 8/13/2021 Mr. Berry filed a sick-call with HS reporting that lack of gluten free choices from Food Service and Commissary.

61.   On 8/14/2021 Mr. Berry's gluten test showed 12.8H - out of range.

62.   On 9/15/2021 Camilla Hansen told Mr. Berry that a gluten free diet was not indicated and instructed him to self-select gluten

free foods.

63. On 9/15/2021 Camilla Hansen documented in Mr. Berry's medical records that labs showed a gluten intolerance rather than an allergy and when Mr. Berry requested a gluten free diet and gluten free items to purchase on Commissary he was instructed that he had been told several times to self-select gluten free foods.

64. Due to the lack of available gluten and lactose free options caused by the prison environment, Mr. Berry must choose between continued suffering or improper nutrition as excluding gluten and lactose from his prison diet would led to malnutrition because the BOP National Menu is designed to provide proper nutrition in its entirety not in parts.

## CAUSE OF ACTION

E. The Untied States violated New Jersey tort law against Medical Malpratice.

    i. The standard of care for a patient who is diagnosed with Irritable Bowel Disease with gluten and lactose intolerances is to prescribe a specific diet free of gluten and lactose.

    ii. The Untied States deviated from the standard of care

when it refused to prescribe a gluten and lactose free diet to alleviate symptoms but instead instructed Mr. Berry to self select from a menu which is designed to provide proper nutrition in its entirety not in parts.

iii. There is a direct link between aggravation of symptoms and the consumption of gluten and lactose in a patient who has IBD and is gluten and lactose intolerant. In addition self selection of gluten and lactose free items from the national BOP menu results in a diet deficient of proper nutrition and calories.

iv. The continued self selection results in malnutrition or the consumption of gluten and lactose causes further pain, suffering, and loss of enjoyment of life.

F. Camilla Hansen was deliberately indifferent to Mr. Berry's serious medical condition in violation of the Eighth Amendment.

i. Mr. Berry's diagnoses of Irritable Bowel Disease with gluten and lactose intolerance are serious medical

14

conditions requiring treatment.

ii.   Camilla Hansen knew of Mr. Berry's diagnoses as she was his Mid Level Provider and the diagnoses were documented in his medical records.

iii.  Camilla Hansen denied a reasonable request for gluten and lactose free diet because Mr. Berry had an intolerance versus an allergy knowing that if Mr. Berry self-selected gluten and lactose free items from the National BOP Menu it would result in a diet deficient of proper nutrition and calories and if he chose to maintain proper nutrition and calories he would experience pain, suffering, and loss of enjoyment of life.

## VIII.   RELEVANT FACTS

65.  In 3/2011 Mr. Berry was assaulted and reported pain in his upper back.

66.  In 2016 Mr. Berry was added to the Orthopedic/Rheumatology Chronic Care Clinic and scheduled for a steroid injection in his left tricep tendon.

67.  In 11/2016 Mr. Berry was examined for shoulder pain despite

the steroid injection.

68. In 2/2017 Mr. Berry was prescribed physical therapy exercises for pain reduction.

69. In 3/2017 the Physical Therapist issued exercises and an exercise band for shoulder strenthening.

70. In 5/2017 Mr. Berry reported to HS continued pain in his left shoulder.

71. From 1/2018 to 1/2019 HS prescribed several medications to relieve Mr. Berry's pain to no avail.

72. On 1/3/2019 HS conducted an x-ray and the results showed Mild Degenerative Disc Disease at C5 - C6 & C6 - C7, Minimal Degenerative Disc Disease at C4 - C5, and straightening of the cervical spine which could be due to muscular spasms.

73. On 2/12/2019 HS prescribed Meloxicam for pain and indicated that Mr. Berry has Spondylosis, Unspecified.

74. In 7/2019 Mr. Berry reported to HS that Meloxican was not effective in managing the pain in his shoulder and neck.

75. In 9/2020 Mr. Berry reported to HS that he was having extreme pain with mild headaches which were now frequent and affecting his sleep.

76. In 1/2021, 5/2021, and 6/2021 Mr. Berry continued to report pain in his neck and left shoulder with headaches 2 - 3 times per week.

77. On 6/21/2021 HS documented in Mr. Berry's medical records the an x-ray revealed Mild Degenerative Disc Disease at C6 - C7, space narrowing with small end plate degenerative osteophyte and minimal arthopathy. There was a 3mm - 4mm calcification anterior

logitudinal ligament at the disc level. HS documented that pain appears to be Osteoarthritis and Chronic, and functional status is most consistent with Advanced ADLs.

78.  On 6/30/2021 Dr. Laughing well (MAT) MD prescribed Mr. Berry Acetaminophen 650mg twice daily and added him to the Orthopedic/Rheumatology Chronic Care Clinic.

79.  On 7/2/2021 Ellen Mace-Leibson (MAT) NER MAST Physician . (Mace-Leibson) reviewed Mr. Berry's Commissary purchases for June 2021, removed him from the Orthopedic/Rheumatology Clinic and discontinued the Acetaminophen Dr. laughingwell prescribed.

80.  Mace-Leibson documented her reason as referred to commissary.

81.  On 7/21/2021 Mr. Berry again reported to HS that he was having headaches and difficulty sleep due to chronic pain.

82.  In 8/2021 Mr. Berry reports that OTC medications from Commissary are not effective in reducing pain.

83.  In 4/2022 Mr. Berry again reports to HS that he is still having pain in his left shoulder and neck and that the OTCs do not relieve pain.

84.  On 7/8/2022 Abigail Lopez De Lassalle MD (Lopez) gave Mr. Berry exercise printouts to address his shoulder and neck pain.

85.  Despite Mr. Berry's continued complaints of constant pain and headaches 3 - 4 times per week from osteoarthritis and left should pain, Lopez told him she will not provide him with any other care or treatment.

86.  When Mr. Berry asked Lopez why she would not address other pending sick call requests she replied "because you're and inmate", and to the effect that Mr. Berry does not get the same

17

treatment as someone on the outside who has not committed a crime.

## CAUSE OF ACTION

G.   Mace-leibson and Lopez were deliberately indifferent to Mr. Berry's serious medical condition in violation to the Eighth Amendment.

    i.   Mr. Berry's diagnosis of osteoarthritis and neck pain are sericus medical conditions requiring treatment.

    ii.   Mace-Leibson and Lopez knew of Mr. Berry's diagnoses as they were his treating physicians and the diagnoses are documented in his medical records.

    iii.   Mace-Leibson removed Mr. Berry from the Orthopedic/Rheumatology Clinic and discontinued the Acetaminophen both prescribed by Dr. Laughingwell. Mace-Leibson made this decision after review of Mr. Berry's Commissary purchases and stated her reason as referred to Commissary. The removals were for non-medical reasons.

18

iv.   Lopez ignored Mr. Berry's continued complaints of constant pain and headaches cause by osteoarthritis and shoulder pain stating that she will not provide any other care or treatment. Lopez later stated that she would not address pending sick call requests because Mr. Berry was an inmate and does not get the same treatment as someone on the outside who has not committed a crime. Lopez's denied care for non-medical reasons.

## RELIEF REQUESTED

Mr. Berry requests the following relief:

87.   Declare that the United States violated New Jersey, Indiana, and Arizona tort laws against Medical Malpractice/Negligence when it continually prescribed the use if NSAIDs to treat Mr. Berry's chronic pain knowing of his diagnosed kidney disease and the harm caused by such.

88.   Award Compensatory Damages against the United States for violating New Jersey, Indiana, and Arizona tort laws against Medical Malpractice/Negligence when it continually prescribed the use if NSAIDs to treat Mr. Berry's chronic pain knowing of his diagnosed kidney disease and the harm caused by such.

89.   Declare that the United States violated New Jersey tort laws against Medical Malpractice when it failed to closely supervise Mr. Berry's use of Omeprazole knowing he has a diagnosed kidney

disease and the associated kidney toxicity.

90.  Award Compensatory Damages against the United States for violating New Jersey tort laws against Medical Malpractice when it failed to closely supervise Mr. Berry's use of Omeprazole knowing he has a diagnosed kidney disease and the associated kidney toxicity.

91.  Declare that Lopez violated Mr. Berry's Eighth Amendment right when she removed him from the Gastrointestinal Chronic Care Clinic so the BOP would not have to provide him with medication.

92.  Award Compensatory and Punitive Damages against Lopez for violating Mr. Berry's Eighth Amendment right by removing him from the Gastrointestinal Chronic Care Clinic so the BOP would not have to provide him with medication.

93.  Declare that C. Hansen HSA violated Mr. Berry's Eighth Amendment right when she denied requests to provide medication he could not otherwise acquire himself because Commissary was out-of-stock.

94.  Award Compensatory and Punitive Damages against C. Hansen HSA for violating Mr. Berry's Eighth Amendment right when she denied requests to provide medication he could not otherwise acquire himself because Commissary was out-of-stock.

95.  Declare that Mace-Leibson violated Mr. Berry's Eighth Amendment right when she failed to closely supervise his use of Omeprazole knowing he had diagnosed kidney disease and the associated kidney toxicity.

96.  Award Compensatory and Punitive Damages against Mace-

Leibson for violating Mr. Berry's Eighth Amendment right when she failed to closely supervise his use of Omeprazole knowing he has diagnosed kidney disease and the associated kidney toxicity.

97.   Declare that the United States violated New Jersey tort law against Medical Malpractice when it forced Mr. Berry to choose between proper nutrition or the pain associated with IBD and gluten and lactose intollerances.

98.   Award Compensatory Damages against the United States for violating New Jersey tort law against Medical Malpractice when it forced Mr. Berry to choose between proper nutrition or the pain associated with IBD and gluten and lactose intolerances.

99.   Declare that Camilla Hansen violated Mr. Berry's Eighth Amendment right when she forced Mr. Berry to choose between proper nutrition or the pain associated with IBD and gluten and lactose intolerances.

100.   Award Compensatory and Punitive Damages against Camilla Hansen for violating Mr. Berry's Eighth Amendment right when she forced him to choose between proper nutrition or the pain associated with IBD and gluten and Lactose intolerances.

101.   Declare that Mace-Leibson violated Mr. Berry's Eighth Amendment right when she removed him from the Orthopedic/Rheumatology Clinic and discontinued the Acetaminophen, both prescribed by Dr. Laughingwell, referring Mr. Berry to Commissary after reviewing his Commissary purchases.

102.   Award Compensatory and Punitive Damages against Mace-Leibson for violating Mr. Berry's Eighth Amendment right when she removed him from the Orthopedic/Rheumatology Clinic and

21

discontinued the Acetaminophen, both prescribed by Dr. Laughingwell, referring Mr. Berry to Commissary after reviewing his Commissary purchases.

103. Declare that Lopez violated Mr. Berry's Eighth Amendment right when she ignored his continued complaints of constant pain and headaches caused by osteoarthritis and shoulder pain because he was an inmate and does not get the same treatment as someone who has not committed a crime.

104. Award Compensatory and Punitive Damages against Lopez for violating Mr. Berry's Eighth Amendment right when she ignored his continued complaints of constant pain and headaches caused by osteoarthritis and shoulder pain because he was an inmate and does not get the same treatment as someone who has not committed a crime.

105. Enjoin the United States and/or any of its employees or subcontractors from prescribing Mr. Berry NSAIDs because of his diagnoised kidney diesease.

106. Enjoin the United States and/or and of its employees or subcontractor from prescribing Omeprazole or medications in the same class without close physicians supervision due to Mr. Berry's diagnosed kidney disease and the associated kidney toxicity.

107. Order the United States and/or any of its employees or subcontractors to place Mr. Berry on the Gastrointestinal Chronic Care Clinic and enjoin them from removing him from the chronic care clinic so they do not have to provide medications to treat his severe GERD.

22

108.   Enjoin the United States and/or any of its employees or subcontractors from denying Mr. Berry's requests for Omeprazole when Commissary is out-of-stock or he has not other source of medication to treat his GERD.

109.   Enjoin the United States and/or and of its employees or subcontractor from denying Mr. Berry's requests for a a gluten and lactose free diet and ordering him to self-select gluten and lactose free items from the National BOP Menu  as it would result in a diet deficient of proper nutrition and calories.

110.   Enjoin the United States and/or any of its employees or subcontractors from removing Mr. Berry from the Orthopedic/Rheumatology Clinic and/or discontinuing prescribed medication to treat osteoarthritis and neck pain based on Commissary pruchases.

111.   Enjoin the United States and/or any of its employees or subcontractors from denying care or treatment because he is an inmate.

## VERIFICATION

112.   I verify that the foregoing facts are true and correct to my knowledge and the facts stated on information and belief are true and correct to the best of my knowledge and belief.

_____
Gregory Berry

SUBSCRIBED AND SWORN TO BEFORE ME on
Fairton, NJ _____ [date] at October 7, 2022
[city, state].

[Notary's seal]

_____ [notary's signature]
J. Narvaez _____ [typed name]
Notary Public in and for
the State of ___ New Jersey
My commission expires
_____ [date].

JESSIE N. NARVAEZ
NOTARY PUBLIC OF NEW JERSEY
Commission # 50150588
My Commission Expires 2/11/2026

23

Date: October 11, 2022

Respectfully submitted on this 11th day of October, 2022.

Gregory Berry