NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

GREGORY MAC DONALD :
BERRY, :
 :
       Plaintiff. : Civ. No. 22-6113 (RMB-AMD)
 :
  v. :
 : **OPINION**
UNITED STATES OF AMERICA, :
et al., :
 :
       Defendants. :
_____

RENÉE MARIE BUMB, United States District Judge

    Plaintiff Gregory Mac Donald Berry, a federal prisoner incarcerated in the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), filed this civil suit under 42 U.S.C. § 1983, alleging medical malpractice and deliberate indifference to his serious medical needs while incarcerated in various federal prisons, most recently in FCI Fairton. Plaintiff paid the filing fee but submitted an IFP application (IFP App., Docket No. 1-1) under 28 U.S.C. § 1915(a), for the purpose of obtaining service of the summons and complaint on the defendants by the United States Marshals Service. Although Plaintiff submitted a statement of his inmate trust account, it is not a certified statement signed by the appropriate prison official, as required under 28 U.S.C. § 1915(a)(2). Therefore, his IFP application will

1

be denied without prejudice. For the reasons, discussed below, Plaintiff's complaint may proceed in part and will be dismissed in part, with leave to file an amended complaint, if he can allege additional facts supporting those claims that are dismissed without prejudice.

I. *SUA SPONTE* DISMISSAL

When a prisoner files a complaint and brings claims against a governmental entity or officer or employee of a governmental entity, 28 U.S.C. § 1915A(b) or brings claims concerning prison conditions, 42 U.S.C. § 1997e(c)(1), courts must review the complaint and *sua sponte* dismiss any claims that are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. Courts, however, must liberally construe pleadings that are filed pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See, Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.) This Court will screen the complaint and will then consider, pursuant

to Federal Rule of Civil Procedure 21, whether the claims and defendants are properly joined under Federal Rules of Civil Procedure 18 and 20.

## II. THE COMPLAINT

Plaintiff asserts jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The defendant to the FTCA claim is the United States of America, and the defendants to the *Bivens* claims, in their individual and official capacities, are RN C. Hansen, Dr. Abigail Lopez De LaSalle, D.O. Ellen Mace-Leibson, and ARNP Camilla Hansen.

Plaintiff seeks damages and declaratory and injunctive relief against the United States of America for medical malpractice under the Federal Tort Claims Act, and also against the individual defendants under *Bivens* for deliberate indifference to his serious medical needs. Plaintiff was incarcerated in various correctional institutions within the Federal Bureau of Prisons from at least 2011 to the present. He was transferred to FCI Fairton in October 2018.

After Plaintiff was diagnosed with Stage III kidney disease in 2014. He was advised to avoid taking NSAIDS. However, he was prescribed NSAIDS to treat his chronic pain for 61 out of 99 months during his incarceration within the Federal Bureau of Prisons ("BOP") in Indiana, Arizona and New Jersey. He alleges medical malpractice for prescribing him medication that worsened his kidney disease.

In August 2012, Plaintiff was diagnosed with reflux esophagitis ("GERD"). Over the next three years at USP Tuscon, his treatment with omeprazole controlled

his severe GERD symptoms. After he was transferred to Terre Haute, Indiana, he was treated in the chronic care clinic with omeprazole. After he was transferred to FCI Fairton, on October 10, 2018, Dr. Lopez discontinued his prescription for omeprazole and removed him from the chronic care clinic, advising him instead to purchase ranitidine from the commissary. One day later, and through May 19, 2021, Plaintiff was placed back in the chronic care clinic and supplied with omeprazole, but only when the medication was not available for his purchase in the commissary.

On December 23, 2020, a physician's assistant documented that omeprazole was clinically indicated for Plaintiff's treatment. That same day, D.O. Mace-Leibson signed a discontinuation of Plaintiff's prescription for omeprazole, based on the pharmacist's note that he did not qualify for a prescription. He was advised to purchase omeprazole at the commissary. After May 2021, when Plaintiff requested omeprazole from RN C. Hansen when it out-of-stock in the commissary, she refused and told him to buy Tums and Mylanta. Without omeprazole, Plaintiff suffers pain from GERD. Further, he alleges his use of omeprazole requires monitoring in the chronic care clinic because omeprazole has potential for kidney toxicity. In addition to a medical malpractice claim, he alleges Dr. Lopez, D.O. Mace-Leibson, and RN C. Hansen were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.

Plaintiff also suffered from a lactose intolerance, which was noted in his medical records on January 19, 2011. He was approved for a lactose-free diet, but he allowed this to lapse. Years later, in 2017, he requested an evaluation for a wheat

allergy, reporting that when he eliminated wheat from his diet his bowel symptoms disappeared. Staff in Health Services advised him that his test results did not support a food allergy, but he could continue to self-select gluten-free food if it alleviated his symptoms. After complaining of bowel symptoms in February 20, 2020, Plaintiff's medical records indicated that he may have irritable bowel syndrome or gastroenteritis. On June 14, 2021, Plaintiff told RN C. Hansen that his bowel symptoms arose after eating gluten. She told Plaintiff to continue to self-select gluten-free food, and she diagnosed irritable bowel syndrome.

In August 2021, Plaintiff complained of a lack of gluten-free items in the commissary and "chowhall." His gluten test result was "out of range." In September 2021, NP Camilla Hansen told Plaintiff that his lab tests indicated a gluten intolerance, not an allergy. Therefore, a gluten-free diet was not indicated, but he could self-select gluten-free food. Plaintiff alleges that due to the lack of sufficient gluten-free products available to him, he must choose between malnutrition or suffering gastrointestinal symptoms. He asserts claims of medical malpractice and deliberate indifference to his serious medical need by NP Camilla Hansen, who denied his request for a gluten-free, lactose-free special diet.

Plaintiff also suffered from chronic pain. He was first treated for upper back pain in 2011. In 2016 and 2017, he was treated with steroid injections and physical therapy for shoulder pain. From January 2018 through January 2019, he was prescribed pain medications, to no avail. In January 2019, his x-ray showed mild degenerative disc disease. In February 2019, he was prescribed Meloxicam. In July

2019, he reported Meloxicam was ineffective. In September 2020 through June 2021, Plaintiff reported extreme pain in his shoulder and neck, with frequent headaches. Plaintiff had an x-ray in June 2021, resulting in his diagnosis with osteoarthritis. A physician's assistant prescribed twice-daily acetaminophen, and placed Plaintiff in the rheumatology chronic care clinic. One month later, D.O. Mace-Leibson discontinued the acetaminophen prescription and rheumatology chronic care clinic. She referred Plaintiff to the commissary to purchase over-the-counter medications.

In August 2021, and again in April 2022, Plaintiff reported that the over-the-counter medications were not relieving his shoulder and neck pain. Dr. Lopez recommended exercises. Plaintiff continued to complain of constant neck and shoulder pain and frequent headaches. Dr. Lopez told him that she would not provide any additional treatment because he is a prisoner and not entitled to the same treatment as someone who did not commit a crime. Plaintiff asserts Dr. Lopez and D.O. Mace-Leibson were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.

## III. DISCUSSION

### A. Federal Tort Claims Act

Plaintiff brings medical malpractice claims against the United States of America based on alleged negligence in providing his medical care while incarcerated within the BOP. The Court will liberally construe Plaintiff's allegation that he exhausted all administrative remedies and assume exhaustion of remedies

required under the Federal Tort Claims Act, 28 U.S.C. § 2675(a). "This exhaustion requirement 'is jurisdictional and cannot be waived.'" *Priovolos v. Fed. Bureau of Investigation*, 686 F. App'x 150, 152 (3d Cir. 2017) (quoting *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) (citation omitted).

There is a two-year statute of limitations, from the date of accrual, for filing a tort claim notice against the Government with the appropriate agency. 28 U.S.C. § 2401(b). Some of Plaintiff's FTCA claims appear to have accrued more than two years before he filed this action. However, "the FTCA's statute of limitations is not jurisdictional" and it is the "defendant's burden to establish the date when the plaintiff knew, or reasonably should have known, of the cause of his injury." *Hughes v. United States*, 263 F.3d 272, 278 (3d Cir. 2001) (citations omitted). Therefore, Plaintiff's FTCA claims may proceed past screening for *sua sponte* dismissal.

**B.**     ***Bivens* Claims**

The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical need. *Greenland v. United States*, 661 F. App'x 210, 215 (3d Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Federal prisoners can bring such claims for damages in a *Bivens* action. *See Ziglar v. Abbasi,* 137 S. Ct. 1843, 1855 (2017) (citing *Carlson v. Green*, 446 U.S. 14, 19 (1980). A medical need is "serious" under circumstances where: 1) it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would recognize the need for treatment; or (2) denial or delay in providing medical care results in unnecessary or wanton

7

infliction of pain. *Greenland*, 661 F. App'x at 215 (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

> Deliberate indifference involves the denial of reasonable requests for medical treatment that exposes the inmate to suffering or the threat of residual injury, or the intentional refusal to provide care when the need for that care is known, or the opting for " 'an easier and less efficacious treatment' " under some circumstances, or the deliberate prevention of the recommended treatment.

*Id.* (quoting *Lanzaro*, 834 F.2d at 346-47.) However, "[m]ere negligence or mere disagreement about a course of treatment does not state a claim of cruel and unusual punishment." *Id.* (citing *Lanzaro*, 834 F.2d at 346).

### 1. *Bivens* Claims Against Dr. Lopez

Plaintiff asserts two *Bivens* claims against Dr. Lopez. First, that she removed him from the gastrointestinal chronic care clinic so the prison would not have to pay for his omeprazole. This claim presents a disagreement with Dr. Lopez's professional judgment that Plaintiff did not require chronic care monitoring for his use of omeprazole, and that he could treat his GERD symptoms by purchasing over-the-counter medication as needed. "As long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). This *Bivens* claim will be dismissed without prejudice for failure to state a claim.

Plaintiff's second *Bivens* claim against Dr. Lopez is that she ignored his complaints of headache and pain from osteoarthritis because an inmate is not

8

entitled to the same medical treatment as someone who has not committed a crime. This claim may proceed against Dr. Lopez, not because she made this statement, but rather because Plaintiff alleges she refused to provide any further treatment after he reported the prescribed exercises were not helpful, and he continued to suffer pain.

### 2. *Bivens* Claims Against D.O. Mace-Leibson

Plaintiff asserts two *Bivens* claims against D.O. Mace-Leibson. First, he alleges she violated the Eighth Amendment by discontinuing his participation in the chronic care clinic to monitor his kidney disease while taking omeprazole, a medication he alleges can damage the kidneys. This claim presents a disagreement with D.O. Mace-Leibson's professional judgment that close monitoring of Plaintiff's use of omeprazole was unnecessary. *See Brown*, 903 F.2d at 278. Therefore, this claim will be dismissed without prejudice.

Plaintiff's second claim against D.O. Mace-Leibson is for removing him from the rheumatology clinic and discontinuing his prescription for acetaminophen after another medical provider prescribed such treatment. The allegations in the complaint demonstrate that acetaminophen was available to Plaintiff to purchase from the commissary, and that Plaintiff continued to receive treatment for osteoarthritis until Dr. Lopez allegedly refused to provide any further treatment after prescribed exercises failed. Plaintiff's disagreement with D.O. Mace-Leibson's medical judgment concerning his participation in the rheumatology chronic care

9

clinic and prescription for acetaminophen to treat his osteoarthritis do not rise to the level of deliberate indifference. This claim will be dismissed without prejudice.

### 3. *Bivens* Claim Against RN C. Hansen

Plaintiff alleges RN C. Hansen was deliberately indifferent to his need for omeprazole to treat GERD, by refusing to provide it to him when it was out-of-stock in the commissary. She told him to buy Mylanta and Tums instead. In the absence of a medical finding that Plaintiff must exclusively be treated with omeprazole, his assertion that Mylanta and Tums were inappropriate treatment on the occasions when omeprazole was out-of-stock does not rise to the level of deliberate indifference. This Eighth Amendment claim will be dismissed without prejudice.

### 4. *Bivens* Claim Against NP Camilla Hansen

Plaintiff alleges NP Camilla Hansen was deliberately indifferent to his serious medical need for a gluten-free, lactose-free diet because he suffered from IBS caused by intolerance to foods containing dairy and wheat. According to the allegations in the complaint, NP Camilla Hansen explained to Plaintiff that a gluten-free diet was not indicated because his lab tests did not show a gluten allergy. His gluten intolerance could be managed by self-selecting gluten-free foods. Plaintiff complained there were not enough gluten-free foods available to him. There is little about his lactose intolerance in the complaint, only that he was prescribed a lactose-free diet years earlier but allowed it to lapse. Because NP Camilla Hansen exercised her professional judgment after testing Plaintiff for food allergies, the complaint fails to

state her deliberate indifference to a serious medical need. This claim will be dismissed without prejudice.

### C. Motion for Preliminary Injunctive Relief Withdrawn

After filing his original complaint, Plaintiff filed a motion for preliminary injunctive relief (Docket No. 2), raising a new medical claim not included in his original complaint. Shortly thereafter, however, Plaintiff filed a motion to withdraw his motion for preliminary injunctive relief. (Docket No. 3.) The Court will grant his motion to withdraw his prior motion.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's complaint may proceed in part and is dismissed in part without prejudice.

**Date: December 7, 2022**

                                            s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            United States District Judge