**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
Sean W. Fogarty, Esq. (Attorney ID #: 370472021)
61 South Paramus Road, Suite 250
Paramus, NJ 07652
Tel: (201) 347-2151 | sfogarty@decotiislaw.com
*Attorneys for Plaintiff, Gregory Mac Donald Berry*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN DIVISION**

| | |
|---|---|
| GREGORY MAC DONALD BERRY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, C. HANSEN, R.N., BSA, HSA; ELLEN MACE LEIBSON, D.O.; CAMILLA HANSEN, ARNP, et al., CORRECTIONAL OFFICERS KINSELLA, K. SMITH, AND SCHMIDT <br><br> Defendants. | CIVIL ACTION NO.: 1:22-cv-06113 (RMB)(AMD) <br><br><br> **SECOND AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**I.     JURISDICTION**

1.      Jurisdiction of this Court, over the United States of America is invoked pursuant to 28 U.S.C. §l346; Federal Tort Claims Act.

2.      Jurisdiction of this Court, over C. Hansen, Ellen Mace-Leibson, Camilla Hansen, Correctional Officers Kinsella, K. Smith, and Schmidt in their official and individual capacities, is invoked pursuant to 28 U.S.C. §1331; 42 U.S.C. §1983, and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 s. Ct. 1999, 29 L. Ed. 2d 619 (1971).

**II.     PARTIES**

3.      Plaintiff, Gregory Berry ("Plaintiff" or "Mr. Berry"), at all relevant times was incarcerated at United States Penitentiary – Tucson, Arizona; United States Penitentiary - Terre Haute, Indiana and Federal Correctional Institution - Fairton, New Jersey.

1

4.      Plaintiff is currently incarcerated at Federal Correctional Institution - Fairton, New Jersey.

5.      Defendant, United States of America, at all relevant times employed staff at each of the Federal Correctional Institutions.

6.      Defendants, C. Hansen, Ellen Mace-Leibson, Camilla Hansen, and Correctional Officers Kinsella, K. Smith, and Schmidt at all relevant times were employees at Federal Correctional Institution - Fairton, New Jersey.

### III.    PREVIOUS LAWSUITS

7.      Mr. Berry has no previously filed suits.

### IV.    ADMINISTRATIVE REMEDIES

8.      Mr. Berry has fully exhausted all informal and formal Administrative Remedies.

### V.    RELEVANT FACTS

9.      On 1/22/2010 Plaintiff requested and HS approved lactose free, no milk, and non-dairy meals.

10.      On 1/19/2011 HS entered Plaintiff's lactose intolerance as an allergy in his medical records.

11.      HS allowed Plaintiff lactose free meal approval to expire and has since never renewed it.

12.      On 5/22/2017 Plaintiff reported to HS that he may have a wheat allergy, explaining symptoms and requesting an evaluation for food allergy.

13.      On 6/9/2017 Plaintiff reported to HS that eliminating wheat completely resolved his symptoms.

14.      On 6/9/2017 Plaintiff filed a request to HS for food allergies testing, specifically wheat/gluten intolerance.

15.      On 6/19/2017 HS documented that testing did not support a food allergy, however the elimination diet alleviated symptoms, so Plaintiff should continue.

#10395802

16. On 10/25/2018 Plaintiff filed a sick-call with HS complaining of bowel cramping.

17. On 11/1/2018, 2/12 and 4/2/2019 Plaintiff informed HS of his lactose intolerance.

18. On 2/20/2020 Plaintiff reported to HS that: a.) he had been having abdominal pain; b.) had been having gas and bloating; and c.) bowel movements relieved the pain.

19. On 2/20/2020 HS conducted a physical exam on Plaintiff and documented a suspicion of Irritable Bowel Syndrome (IBS) v. acute gastroenteritis.

20. On 6/14/2021 Plaintiff reported to Camilla Hansen ARNP (Camilla Hansen) that every time he eats something with gluten, he experiences lower abdominal cramping, flatulence, and loose bowels.

21. On 6/9 and 6/14/2021 Camilla Hansen instructed Plaintiff to continue self-selecting gluten free foods from chow hall and commissary, even though Hansen knew or should have known that that such foods were either unavailable or severely limited in the prison environment.

22. On 6/14/2021 Camilla Hansen documented that Plaintiff has a diagnosis of Irritable Bowel Disease (IBD) on file, further confirming her actual knowledge that Plaintiff suffered from a serious medical condition requiring medical management and dietary accommodation.

23. On 6/23/2021 Plaintiff filed a sick-call with HS reporting pain in the lower abdominal area, stomach, and intestines. Despite this ongoing distress, Hansen and medical staff failed to provide diagnostic testing, specialist referral, or a medically necessary therapeutic diet.

24. On 8/13/2021 Plaintiff again filed a sick-call with HS reporting that lack of gluten free choices from Food Service and Commissary. Hansen knew or should have known that without such institutional accommodation, Plaintiff could not maintain a medically necessary gluten-free diet.

25. On 8/14/2021 Plaintiff's gluten test showed 12.8H – outside of normal range. This objective medical evidence corroborated Plaintiff's repeated complaints of serious gastrointestinal illness caused by gluten indigestion.

26. Notwithstanding these test results, on 9/15/2021 Camilla Hansen told Plaintiff that a gluten free diet was not indicated and instructed him to self-select gluten free foods, even though she knew those foods were not realistically available in sufficient variety or quantity to maintain Plaintiff's health

3

#10395802

27.    On 9/15/2021 Camilla Hansen further documented in Plaintiff's medical records that labs showed a gluten intolerance rather than an allergy and when Plaintiff requested a gluten free diet and gluten free items to purchase on Commissary, he was instructed that he had been told several times to self-select gluten free foods.

28.    Upon information and belief, as a result of Hansen's refusals, Plaintiff was left with no constitutionally adequate option for meeting his medical needs.

29.    Due to the lack of available gluten and lactose free options caused by the prison environment, Plaintiff must choose between continued suffering of gastrointestinal pain and injury or improper nutrition as excluding gluten and lactose from his prison diet would lead to malnutrition because the BOP National Menu is designed to provide proper nutrition in its entirety not in parts.

30.    Hansen's actions and omissions described above demonstrate deliberate indifference: she had actual knowledge of Plaintiff's diagnosis, symptoms, and laboratory confirmation of gluten intolerance, yet repeatedly disregarded the need for reasonable medical or dietary accommodation, leaving Plaintiff to endure ongoing pain, digestive injury, and nutritional risk.

## CAUSE OF ACTION

A.  The United States violated New Jersey tort law against Medical Malpractice.

    i.    The standard of care for a patient who is diagnosed with Irritable Bowel Disease with gluten and lactose intolerances is to prescribe a specific diet free of gluten and lactose.

    ii.    The United States deviated from the standard of care when it refused to prescribe a gluten and lactose free-diet to alleviate symptoms but instead instructed Plaintiff to self-select from a menu which is designed to provide proper nutrition in its entirety not in parts.

    iii.    There is a direct link between aggravation of symptoms and the consumption of gluten and lactose in a patient who has IBD and is gluten and lactose intolerant. In addition, self-selection of gluten and lactose free items from the national BOP menu results in a diet deficient of proper nutrition and calories.

    iv.    The continued self-selection results in malnutrition or the consumption of gluten and lactose causes further pain, suffering, and loss of enjoyment of life.

#10395802

B. Camilla Hansen was deliberately indifferent to Plaintiff's serious medical condition in violation of the Eighth Amendment.

i.      Plaintiff's diagnoses of Irritable Bowel Disease with gluten and lactose intolerance are serious medical conditions requiring treatment. These conditions are well recognized by the medical community as requiring ongoing treatment, dietary modification, and medical monitoring in order to avoid pain, gastrointestinal injury, and long-term complications.

ii.     At all relevant times Camilla Hansen knew of Plaintiff's diagnoses as she was his Mid-Level Provider, and the diagnoses were repeatedly documented in his medical records.

iii.    Despite this knowledge, Hansen refused to exercise professional medical judgment following laboratory testing that confirmed Plaintiff's gluten sensitivity and existing medical records reflecting lactose intolerance. Instead of providing or recommending a medically appropriate gluten-free and lactose-free diet, Hansen dismissed Plaintiff's request on the technical ground that his condition was an "intolerance" rather than a formal "allergy."

iv.     Camilla Hansen denied a reasonable request for gluten and lactose free diet because Plaintiff had an intolerance versus an allergy knowing that if Plaintiff self-selected gluten and lactose free items from the National BOP Menu it would result in a diet deficient of proper nutrition and calories and if he chose to maintain proper nutrition and calories he would experience pain, suffering, and loss of enjoyment of life.

v.      Hansen knew or should have known that instructing Plaintiff simply to "self-select" gluten- and lactose-free foods from the Bureau of Prisons' National Menu and commissary was not a medically sufficient alternative. Gluten-free and lactose-free options were severely limited in both availability and nutritional balance, making it impossible for Plaintiff to meet his daily caloric and nutritional needs while avoiding the foods that caused him serious gastrointestinal harm.

vi.     Hansen's decision to deny dietary accommodation was not based on sound medical judgment but instead reflected a conscious disregard of known risks. Hansen understood that, under her directive, Plaintiff faced a choice between (a) consuming gluten and lactose and enduring predictable pain, gastrointestinal injury, and diminished quality of life, or (b) attempting to avoid gluten and lactose but suffering malnutrition due to an incomplete and deficient diet.

5

#10395802

vii.    Hansen's actions and omissions were not mere negligence or differences in medical opinion. They amounted to deliberate indifference because she possessed objective and subjective awareness of Plaintiff's serious medical needs, had clear evidence confirming those needs, and yet knowingly refused to take reasonable measures to abate the substantial risk of harm.

viii.    As a direct and proximate result of Hansen's deliberate indifference, Plaintiff has suffered and continues to suffer unnecessary pain, digestive distress, malnutrition risk, and loss of enjoyment of life, in violation of his rights under the Eighth Amendment to the United States Constitution.

## VI.    RELEVANT FACTS

31.    In 3/2011 Mr. Berry was assaulted and reported pain in his upper back.

32.    In 2016 Mr. Berry was added to the Orthopedic/Rheumatology Chronic Care Clinic and scheduled for a steroid injection in his left triceps tendon.

33.    In 11/2016 Mr. Berry was examined for shoulder pain despite the steroid injection.

34.    In 2/2017 Mr. Berry was prescribed physical therapy exercises for pain reduction.

35.    In 3/2017 the Physical Therapist issued exercises and an exercise band for shoulder-strengthening.

36.    In 5/2017 Mr. Berry reported to HS continued pain in his left shoulder.

37.    From 1/2018 to 1/2019 HS prescribed several medications to relieve Mr. Berry's pain to no avail.

38.    On 1/3/2019 HS conducted an x-ray, and the results showed Mild Degenerative Disc Disease at CS -C6 & C6 -C7, Minimal Degenerative Disc Disease at C4 -CS, and straightening of the cervical spine which could be due to muscular spasms.

39.    On 2/12/2019 HS prescribed Meloxicam for pain and indicated that Mr. Berry has Spondylosis, Unspecified.

40.    In 7/2019 Mr. Berry reported to HS that Meloxicam was not effective in managing the pain in his shoulder and neck.

#10395802

41.     In 9/2020 Mr. Berry reported to HS that he was having extreme pain with mild headaches which were now frequent and affecting his sleep.

42.     In 1/2021, 5/2021, and 6/2021 Mr. Berry continued to report pain in his neck and left shoulder with headaches 2 - 3 times per week.

43.     On 6/21/2021 HS documented in Mr. Berry's medical records that the x-ray revealed Mild Degenerative Disc Disease at C6 -C7, space narrowing with small end plate degenerative osteophyte and minimal arthropathy. There was a 3mm -4mm calcification anterior longitudinal ligament at the disc level. HS documented that pain appears to be Osteoarthritis and Chronic, and functional status is most consistent with Advanced ADLs.

44.     On 6/30/2021 Dr. Laughingwell (MAT) MD prescribed Mr. Berry Acetaminophen 650mg twice daily and added him to the Orthopedic/Rheumatology Chronic Care Clinic.

45.     On 7/2/2021 Ellen Mace-Leibson (MAT) NER MAST Physician, (Mace-Leibson) reviewed Mr. Berry's Commissary purchases for June 2021, removed him from the Orthopedic/Rheumatology Clinic and discontinued the Acetaminophen Dr. Laughingwell prescribed, despite Mr. Berry's documented diagnosis and continuing severe pain.

46.     Mace-Leibson documented her reason as "referred to commissary," reflecting a non-medical rationale unrelated to Mr. Berry's diagnosis, symptoms, or prior clinical findings.

47.     On 7/21/2021 Mr. Berry again reported to HS that he was having headaches and difficulty sleep due to chronic pain.

48.     In 8/2021 Mr. Berry reports that OTC medications from Commissary are not effective in reducing pain.

49.     In 4/2022 Mr. Berry again reports to HS that he is still having pain in his left shoulder and neck and that the OTCs do not relieve pain.

50.     Defendant Mace-Leibson's decision to discontinue Mr. Berry's medical prescribed Acetaminophen and to remove him from the Rheumatology Chronic Care Clinic—without any medical justification and contrary to another provider's treatment plan—was not the exercise of professional judgment. Instead, it demonstrated deliberate indifference to Mr. Berry's serious medical needs, as she knowingly left him without effective pain management despite objective evidence of chronic degenerative conditions and ongoing reports of severe pain and functional limitation.

#10395802

**CAUSE OF ACTION**

C.  Mace-Leibson was deliberately indifferent to Mr. Berry's serious medical condition in violation to the Eighth Amendment.

i.  Mr. Berry's diagnosis of osteoarthritis and neck pain are serious medical conditions requiring treatment. These conditions are objectively serious, having been confirmed by diagnostic imaging, physical examinations, and repeated medical diagnoses over multiple years.

ii.  On June 30, 2021, Dr. Laughingwell, a treating physician at the facility, prescribed Mr. Berry Acetaminophen 650 mg twice daily and returned him to the Orthopedic/Rheumatology Chronic Care Clinic for ongoing monitoring of his degenerative spine and joint conditions.

iii.  Mace-Leibson knew of Mr. Berry's diagnoses as they were his treating physicians, and the diagnoses are documented in his medical records.

iv.  Mace-Leibson removed Mr. Berry from the Orthopedic/Rheumatology Clinic and discontinued the Acetaminophen both prescribed by Dr. Laughingwell. Mace-Leibson made this decision after review of Mr. Berry's Commissary purchases and stated her reason as referred to Commissary. The removals were for non-medical reasons and demonstrate that Mace-Leibson's decision was based not on professional medical judgment but on an arbitrary, non-medical consideration of Mr. Berry's commissary purchases.

v.  Mace-Leibson knew, from Mr. Berry's medical records and long treatment history, that he suffered from a chronic degenerative condition requiring consistent medical management. She also knew that commissary over-the-counter medications had previously proven ineffective in controlling Plaintiff's pain, and that without prescribed treatment he would face continued pain, headaches, and functional impairment.

vi.  Despite this knowledge, Mace-Leibson deliberately disregarded Mr. Berry's serious medical needs by discontinuing effective prescribed treatment and excluding him from specialty chronic care follow-up, leaving him to endure unnecessary pain, loss of sleep, and diminished quality of life.

vii.  Mace-Leibson's decision was not a matter of medical judgment but a knowing refusal to provide constitutionally adequate medical care, in violation of the Eighth

8

#10395802

Amendment.

viii.    As a direct and proximate result of Mace-Leibson's deliberate indifference, Mr. Berry's suffered and continues to suffer from unmanaged chronic pain, recurring headaches, sleep disturbance, and loss of enjoyment of life.

## VII. RELEVANT FACTS

51.    Approximately one week prior to March 7, 2024, Plaintiff was granted access to meet with Defendants Lieutenant Kinsella and Lieutenant K. Smith. During that meeting, Plaintiff advised both Lieutenants that Plaintiff was being threatened by another inmate, Phillip Powell, and that Plaintiff's personal property was being stolen from Plaintiff's assigned cell because Plaintiff was classified as a sex offender.

52.    Despite being put on direct notice of these threats and thefts, Defendants Kinsella and Smith failed to take any action to investigate, separate Plaintiff from Powell, or otherwise abate the obvious risk of harm.

53.    On March 7, 2024, at approximately 8:50 p.m., inmate Phillip Powell entered Plaintiff's assigned cell (B-L/208) and, without warning, violently assaulted Plaintiff.

54.    As a direct result of this assault, Plaintiff sustained serious injuries, which were visibly apparent and later documented in photographs taken by prison staff on March 8, 2024.

55.    After activating the cell duress button at approximately 1:00 a.m. on March 8, 2024, Plaintiff was met at the cell door by Lieutenant K. Smith and Correctional Officer Schmidt. Plaintiff reported that he was suffering from a possible concussion, a broken right arm, and severe pain.

56.    Despite these obvious and serious injuries, Defendants Smith and Schmidt informed Plaintiff that no medical staff were on duty and that Plaintiff would have to wait until morning for treatment. Plaintiff specifically requested immediate transportation to an outside hospital emergency room, which was denied.

57.    Defendant Smith, who lacked any medical training, abused his position of authority by unilaterally determining that Plaintiff's condition did not warrant immediate medical care, even though Plaintiff's injuries were later confirmed by medical professionals to be extensive.

58.    Defendants Kinsella and Smith, although fully aware of the escalating risk between Plaintiff and inmate Powell, failed to take reasonable measures to separate the two inmates or to ensure Plaintiff's safety, thereby exposing Plaintiff to an obvious and substantial risk of serious

9

harm.

59.     The conduct of Defendants Kinsella and Smith demonstrated deliberate indifference to Plaintiff's health and safety, in violation of the Eighth Amendment, as they knew of and disregarded a substantial risk of serious harm to Plaintiff.

60.     On or after March 8, 2024, Plaintiff's medical records reflect that laboratory testing for HIV and Hepatitis was performed on Plaintiff because Powell was known within BOP records to be Hepatitis C positive and a drug user.

61.     Prior to the March 7, 2024 assault, Plaintiff's BOP medical records reflect multiple negative HIV and Hepatitis tests. Any future positive test results may therefore be linked directly to the bite to Plaintiff's face inflicted by Powell during the March 7, 2024 assault.

62.     As an additional result of the March 7, 2024 assault, Plaintiff developed a floater in his right eye, for which he has never been evaluated or treated by BOP medical staff.

## CAUSE OF ACTION

D.  The United States, acting through its employees and agents at the Bureau of Prisons, was negligent in failing to provide Plaintiff with timely, adequate, and appropriate medical care, and such negligence caused Plaintiff to suffer unnecessary pain, worsening of his condition, and other damages.

   i.  At all times relevant, the Bureau of Prisons and its employees owed Plaintiff a statutory duty under 18 U.S.C. § 4042 to provide for his safekeeping, protection, and care while in federal custody.

   ii.  The Bureau of Prisons owed Plaintiff a duty to exercise reasonable care to protect him from foreseeable harm and to provide reasonable medical care for serious injuries sustained in custody.

   iii.  The Bureau of Prisons, through its employees, breached these duties by:
      a. Failing to investigate or act upon Plaintiff's report that he was being threatened and targeted by inmate Phillip Powell;
      b. Failing to separate Plaintiff from Powell or otherwise take measures to protect Plaintiff from a foreseeable assault;
      c. Failing to provide prompt and adequate medical care following the March 7, 2024 assault; and
      d. Allowing unqualified correctional staff to make discretionary medical decisions regarding Plaintiff's need for emergency care.

#10395802

iv. As a direct and proximate result of this negligence, Plaintiff sustained serious injuries, endured unnecessary pain and suffering, was exposed to potential blood-borne diseases, and continues to experience ongoing health complications.

E. Smith, Kinsella, and Schmidt were deliberately indifferent to Mr. Berry's serious medical condition in violation to the Eighth Amendment.

i. At all times relevant, Berry was a federal prisoner in the custody of the Bureau of Prisons, and Defendants Smith, Kinsella, and Schmidt were correctional staff employed by the Bureau of Prisons and acting under color of federal law.

ii. The Eighth Amendment to the United States Constitution protects federal prisoners from cruel and unusual punishment, including the right to be free from known and substantial risks of serious harm from other inmates, and the right to adequate medical care for serious medical needs.

iii. Defendants Smith and Kinsella were made aware approximately one week prior to March 7, 2024, that inmate Phillip Powell was threatening Plaintiff and stealing from him due to his classification as a sex offender. Despite this knowledge, they failed to investigate, intervene, or otherwise protect Plaintiff.

iv. On March 7, 2024, Powell violently assaulted Plaintiff in his assigned cell, causing serious injuries. Defendants' failure to separate Plaintiff from Powell, despite prior notice, demonstrated deliberate indifference to a known substantial risk of harm.

v. Following the assault, Plaintiff informed Defendants Smith and Schmidt that he was suffering from a possible concussion, a broken arm, and excruciating pain. Despite the obvious severity of his injuries, Defendants Smith and Schmidt denied immediate hospital transport, stating there was no medical staff available, and unilaterally decided that Plaintiff could wait until morning for treatment.

vi. Defendants Smith and Schmidt lacked any medical training and were not qualified to determine whether Plaintiff's condition required emergency medical care. Defendants' refusal to provide immediate care or hospital transport constituted deliberate indifference to Plaintiff's serious medical needs.

vii. As a direct and proximate result of Defendants' deliberate indifference to Plaintiff's safety and medical needs, Plaintiff suffered severe physical injuries, endured unnecessary pain and suffering, and faces ongoing health risks, including exposure to blood-borne diseases and untreated vision impairment.

11

#10395802

## **RELIEF REQUESTED**

Mr. Berry requests the following relief:

63. Declare that the United States violated New Jersey tort law against Medical Malpractice when it forced Mr. Berry to choose between proper nutrition or the pain associated with IBD and gluten and lactose intolerances.

64. Award Compensatory Damages against the United States for violating New Jersey tort law against Medical Malpractice when it forced Mr. Berry to choose between proper nutrition or the pain associated with IBO and gluten and lactose intolerances.

65. Declare that Camilla Hansen violated Mr. Berry's Eighth Amendment right when she forced Mr. Berry to choose between proper nutrition or the pain associated with IBD and gluten and lactose intolerances.

66. Award Compensatory and Punitive Damages against Camilla Hansen for violating Mr. Berry's Eighth Amendment right when she forced him to choose between proper nutrition or the pain associated with IBD and gluten and lactose intolerances.

67. Declare that Mace-Leibson violated Mr. Berry's Eighth Amendment right when she removed him from the Orthopedic/Rheumatology Clinic and discontinued the Acetaminophen, both prescribed by Dr. Laughingwell, referring Mr. Berry to Commissary after reviewing his Commissary purchases.

68. Award Compensatory and Punitive Damages against Mace-Leibson for violating Mr. Berry's Eighth Amendment right when she removed him from the Orthopedic/Rheumatology Clinic and discontinued the Acetaminophen, both prescribed by Dr. Laughingwell, referring Mr. Berry to Commissary after reviewing his Commissary purchases.

69. Enjoin the United States and/or and of its employees or subcontractor from denying Mr. Berry's requests for a gluten and lactose free diet and ordering him to self-select gluten and lactose free items from the National BOP Menu as it would result in a diet deficient of proper nutrition and calories.

70. Enjoin the United States and/or any of its employees or subcontractors from removing Mr. Berry from the Orthopedic/Rheumatology Clinic and/or discontinuing prescribed medication to treat osteoarthritis and neck pain based on Commissary purchase.

71. Enjoin the United States and/or any of its employees or subcontractors from denying care or treatment because he is an inmate.

#10395802

72.     Award compensatory damages in an amount to be determined at trial for the physical injuries, untreated medical conditions, emotional distress, and pain and suffering caused by Defendants' deliberate indifference to Plaintiff's safety and medical needs.

73.     Reasonable attorneys' fees and costs; and

74.     Such other and further relief as this Court deems just and proper.

## JURY DEMAND

PLAINTIFF DEMANDS TRIAL BY JURY.

**DECOTIIS, FITZPATRICK,
COLE & GIBLIN, LLP**

By: */s/ Sean W. Fogarty*
      Sean W. Fogarty, Esq.
      Attorney for Plaintiff
      61 South Paramus Road
      Paramus, New Jersey 07652

Dated:  December 22, 2025

#10395802